UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CESAR O. GARCIA,

        Petitioner,

    v.                                          Case No. 17-C-693

WILLIAM J. POLLARD,

        Respondent.

## DECISION AND ORDER DENYING PETITION
## FOR RELIEF UNDER 28 U.S.C. § 2254

      Cesar Garcia was found guilty by a Kenosha County jury of three counts of attempted first degree intentional homicide, three counts of first degree reckless endangerment, and one count of aggravated battery by use of a dangerous weapon, all arising out of a drive-by shooting outside a Kenosha home that left one man seriously injured. He was sentenced to 40 years initial confinement and 20 years of extended supervision for the attempted first-degree intentional homicide counts and received concurrent sentences on the reckless endangerment convictions. After several state court appeals, Garcia filed a *pro se* petition for federal relief under 28 U.S.C. § 2254. He later retained counsel who filed an amended petition on his behalf. For the reasons that follow, Garcia's amended petition will be denied and the case dismissed.

## BACKGROUND

### A. Evidence at Trial

      On the evening of April 16, 2008, Luis Perez-Huitron drove his live-in girlfriend Hilda Garcia-Rojas to her third shift job at Monarch Plastics in Kenosha, Wisconsin. Several months

before moving in with Luis, Hilda had been Garcia's girlfriend, and he was apparently unhappy that she had broken off the relationship with him. According to Hilda, Garcia once told her that if she left him, he would kill both her and her new boyfriend. Dkt. No. 11-16 at 28:2–4. Hilda testified after she began seeing Luis, Garcia began following her from work to their house. *Id.* at 27:14–15. He would park his beige Mazda on the street in front of a tavern near the house she shared with Luis. *Id.* at 24:6–21. After he dropped Hilda off at approximately 10:00 p.m. on April 16, 2008, Luis noticed Garcia's car parked outside the work site. Dkt. 11-15 at 58:22–59:7; 61:14–17. As he proceeded back to his house, Luis noticed the car following him. He immediately called his brother Arturo on his phone, told him that Garcia was following him, and asked Arturo to meet him at his house. *Id.* at 62:7–63:9.

Luis and Arturo arrived at the home at approximately the same time. They exited their cars and stood next to Luis' car. Luis' brother-in-law Carlos Bautista-Ibenez arrived shortly thereafter. *Id.* at 65:23–66:24. Garcia stopped his vehicle a short distance down the street and gestured toward Luis with his phone. Luis' phone rang, and he answered it, thinking it was Garcia. The two yelled obscenities at each other. *Id.* at 71:18–73:24. Garcia then hung up, and began slowly driving toward Luis. As Garcia drove by, he pulled out a gun and began shooting at the three men. Although neither Luis nor his brother Arturo was hit, Carlos was struck in the upper chest. *Id.* at 82:1–83:14. Luis and Arturo rushed him to the hospital, and due to prompt medical care, Carlos survived. At trial, both Luis and Carlos identified Garcia as the shooter.

In the meantime, Kenosha police proceeded to the scene where they took photographs, documented their observations, and interviewed neighbors. *Id.* at 138–144. Police soon learned that Garcia lived in Racine with his mother, the actual owner of the car he was driving. Racine

police drove by the home but reported that the beige Mazda was not there. Shortly after midnight, however, word was received that the beige Mazda was parked in the driveway at the home. Kenosha and Racine police proceeded to that location and found Garcia's phone in the car. The call history of the phone retrieved from Garcia's car showed that a call had been placed to Luis' phone on April 16, 2008, at approximately 10:24 p.m. Dkt. No. 11-16 at 206:22–209:20.

A SWAT team was formed and the occupants of the house were ordered outside. Garcia's mother initially told police that he was not at home, but then admitted he was inside hiding in the attic. She later gave a statement at the police station admitting that Garcia had instructed her to say he was not home when police first ordered him to come out of the house over the loud speaker. Although she recanted her statement in her testimony at trial, the officer who took her statement testified that she told him he came into her bedroom when he arrived home shortly before midnight, appeared anxious and upset, and told her he had done something bad. *Id.* at 225:12–230:24; 265:11–277:18. In any event, when Garcia failed to comply with police commands over a loud speaker that he exit the home, police entered, pulled him out of the attic, and took him into custody.

In the search of the home that followed, police found a .22 caliber revolver hidden under the back porch, which was later determined to be the gun that fired the bullet recovered from Carlos' chest and one recovered from the trunk of Luis' car. A State firearms examiner also determined that the markings on a collection of .22 spent cartridges found in the basement of the home were made by the same gun. Dkt. No. 11-17 at 224:10–232:4. Fifty-one bullets that had been fired into a board recovered from the basement were also examined. Although too damaged to determine whether they were fired from the gun recovered from under the porch, the firearms examiner did opine that

3

they were Remington gold .22 caliber bullets, just like the bullets recovered from Carlos' chest and the trunk of Luis' car. *Id.* at 238:7–241:15.

In the face of this evidence, Garcia tried to convince the jury that he was framed. He testified that he had bought and sold guns as a way of making money since he was sixteen years old, and that one of his best customers was Carlos Bautista-Ibenez, the very person he was alleged to have shot. Dkt. No. 11-18 at 175:23–177:12. In fact, Garcia testified that he had sold Carlos the gun that the State claimed he had used to shoot Carlos about two weeks before he was arrested. Before he sold it to Carlos, Garcia testified that he had shown Carlos it was in good working order by test firing it into the boards found in his basement. *Id.* at 179:18–180:23. In closing, Garcia's attorney argued that Luis and Carlos were lying about who shot Carlos. Counsel argued that Carlos was somehow shot with his own gun, and that he called his brother on the way to the hospital and instructed him to plant the gun at Garcia's house so that he would not be caught with a stolen gun. Dkt. No. 11-20 at 68:23–75:20. Counsel also argued that the evidence showing Garcia had called Luis on his phone shortly before the shooting was manufactured by the police and that Hilda was lying about the threat Garcia had made. *Id.* at 64:16–66:9; 76:19–78:4.

Garcia also offered evidence intended to refute the inference that his refusal to exit the house when police ordered him to come outside was due to his involvement in the shooting. In an apparent attempt to provide an alternative explanation for his attempt to hide in the attic, Garcia testified that he thought there was an outstanding warrant for his arrest. Garcia testified on direct that he was arrested in Racine in March of 2008 while in possession of another .22 caliber handgun that police then confiscated. He missed his court appearance for that charge on April 1, 2008, and assumed a warrant had been issued for his arrest. Garcia also claimed he did not exit the house

when police ordered him to do so because his uncle, who thought the police might be there to arrest him, had asked him to flush his drugs down the toilet. Dkt. No. 11-18 at 182:8–183:5; 190:11–194:3.

On cross examination, the prosecutor inquired further into Garcia's March arrest for carrying a concealed weapon in Racine. He elicited the fact that Garcia was arrested in a borrowed car parked outside another young woman's house who had apparently called the police. When police approached, they found the loaded gun on the seat next to him, and he had a ski mask and rubber gloves on his person. A set of two-way radios, which the prosecutor suggested could be used to monitor police transmissions, and a pair of binoculars was also found in the car. Garcia admitted he falsely told police he had found the gun. *Id.* at 240:19–264:10.

Much of the defense rested on expert reconstruction testimony intended to show that the State's account did not match the physical evidence. Based on the assumed positions of the vehicles on the night of the shooting, the defense attempted to show that the shooting could not have occurred in the manner claimed. But because the precise locations of the shooter, the victim, and the vehicles was unknown, this evidence was easily called into question. Dkt. No. 11-19 at 107:11–127:9. After approximately six hours of deliberations, the jury found Garcia guilty on all seven counts.

## B. Postconviction Proceedings and Appeals

In July 2012, Garcia, represented by postconviction counsel, filed a motion in circuit court for a new trial on the ground that his trial counsel was ineffective for failing to recognize that the reckless endangerment charges were lesser-included offenses of the attempted homicide charges. The court conducted a hearing on the motion and subsequently denied the motion on January 8,

2013. The court reasoned that the jury was instructed to consider the greater-included offenses first and that the evidence of guilt was overwhelming, and therefore Garcia was not prejudiced. Garcia subsequently filed an appeal. On July 24, 2013, the Wisconsin Court of Appeals dismissed the appeal to allow Garcia to pursue issues not adequately raised in the circuit court. Garcia filed a second motion for a new trial. The State then moved to dismiss the three counts of first-degree reckless endangerment, and the circuit court granted the State's motion to dismiss and denied Garcia's motion for a new trial. Garcia filed another appeal. The Wisconsin Court of Appeals affirmed Garcia's conviction on October 29, 2014. *State v. Garcia*, No. 2008CF426 (Wis. Ct. App. Oct. 29, 2014). On January 12, 2015, the Wisconsin Supreme Court denied Garcia's petition for review.

On December 22, 2015, Garcia, proceeding *pro se*, filed a postconviction motion pursuant to Wis. Stat. § 974.06, alleging ineffective assistance of both his trial and postconviction attorneys. In addition to the claim that his trial attorney erred in failing to move for dismissal of the lesser included charges of recklessly endangering safety, Garcia also argued that his trial attorney had performed deficiently in introducing evidence of his March 2008 arrest for carrying a concealed weapon and thereby opening the door to the prosecutor's further questioning about the arrest. Counsel's failure to object to the prosecutor's further questioning which elicited the irrelevant and highly prejudicial facts that five weeks earlier he was arrested outside another woman's home with a loaded gun, ski mask, gloves, binoculars, and two-way radios, Garcia argued, portrayed him as "a dangerous criminal, likely to commit any offense." Dkt. No. 29-1 at 12. Garcia also alleged that his trial counsel was ineffective in failing to object to the prosecutor's improper closing argument. He claimed that, during his rebuttal closing argument, the prosecutor improperly argued the issue

6

the jury was to decide was whether the State's witnesses, and even the prosecutor himself, were guilty of perjury and conspiracy, instead of the guilt or innocence of the defendant. In effect, Garcia argued, the prosecutor improperly vouched for the State's witnesses, suggesting that an acquittal cast doubt upon his own professional integrity. *Id.* at 16–17. Finally, Garcia alleged in his *pro se* motion that his postconviction attorney had rendered ineffective assistance by failing to assert the additional claims of ineffective assistance of his trial counsel. *Id.* at 19–21. Garcia claimed his postconviction attorney's failure to assert the additional claims earlier, despite Garcia's request that he do so, constituted sufficient reason for him to do so now. *Id.* at 21–22.

The circuit court denied Garcia's motion without a hearing in a three-sentence order, concluding "Mr. Garcia raises no issues not previously reviewed." Dkt. No. 1-1. On January 18, 2017, the court of appeals summarily affirmed the circuit court's order denying Garcia's motion. *State v. Garcia*, No. 2016AP81 (Wis. Ct. App. Jan 18, 2017). With respect to the unreviewed claims of ineffective assistance of trial and postconviction counsel, the Court of Appeals concluded that they were procedurally defaulted, and thus Garcia was not entitled to review. Dkt. No. 11-11 at 3. The Wisconsin Supreme Court denied Garcia's petition for review on April 10, 2017. Garcia filed his petition for federal relief under 28 U.S.C. § 2254 on May 17, 2017.

## ANALYSIS

Garcia's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*,

7

135 S. Ct. 1372, 1376 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established Federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.*

This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington*, 562 U.S. at 103).

Garcia asserts that his trial and postconviction counsel provided ineffective assistance. In particular, he asserts that his trial counsel failed to recognize that Garcia was charged and convicted on both attempted first degree intentional homicide and its lesser included offense of first degree recklessly endangering safety; improperly introduced other acts evidence about a prior arrest and allowed the prosecutor to question Garcia about it; and failed to object to the improper comments the prosecutor made during closing arguments. A claim of ineffective assistance of trial counsel is governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show (1) that counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) that counsel's deficient performance deprived the defendant of a fair trial. *Id.* at 687–88. A petitioner

satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Id.* To satisfy the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission of counsel was unreasonable." *Id.* at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

### A. Failure to Object to Separate Charging of Lesser Included Offenses

Upon my initial screening of Garcia's petition under Rule 4 of the Rules Governing Section 2254 Petitions, I dismissed Garcia's claim that his trial attorney had provided ineffective assistance by failing to object to the separate charges of the lesser included crimes of recklessly endangering safety. I concluded that the state courts had not unreasonably applied *Strickland* in concluding that even if counsel failed to object to the lesser included charges before trial, Garcia suffered no prejudice since the jury would have been instructed on the greater included offense in any event, and his sentence was unaffected by the jury's guilty verdicts as to those offenses. Counsel then filed an

amended petition which restated the same claim. Rather than again dismiss the claim, I stated I would treat counsel's amendment as a motion for reconsideration.

Garcia does not dispute my initial conclusion that the state courts' determination that he did not suffer prejudice as a result of his trial attorney's failure to object to the separate charging of lesser included offenses. In other words, he does not claim that the state court unreasonably applied *Strickland*. Instead, he contends that submitting the case to the jury with the separate lesser included charges amounted to structural error that requires reversal without regard to harm because the effect of such an error is too difficult to measure. *See, e.g.*, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–49 (2006). This argument is unpersuasive.

A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991), and has been found "only in a 'very limited class of cases.'" *Neder v. United States*, 527 U.S. 1, 8 (1999) (citations omitted). Garcia has failed to explain why the error asserted in his case should be considered structural and has cited no "clearly established law," i.e., a decision by the Supreme Court, so holding. Under these circumstances, I am unable to find that the state courts' decisions are contrary to or unreasonably applied clearly established federal law. Garcia's ineffective assistance claim based on counsel's failure to object to the lesser included charges is therefore dismissed.

### B. Introducing Other Acts and Failing to Object to Closing Argument

Garcia asserts that his trial counsel was also constitutionally ineffective in other ways. He contends that she improperly introduced prejudicial evidence about a prior arrest and thereby opened the door for the prosecutor to question Garcia about it and introduce additional prejudicial evidence.

Garcia also contends that his trial counsel failed to object to the prosecutor's questions which elicited further inadmissible and prejudicial evidence and the improper comments the prosecutor made during closing arguments. His postconviction counsel was ineffective, Garcia claims, because he failed to raise these issues in his first postconviction motion or on appeal. The Wisconsin Court of Appeals did not reach the merits of Garcia's claims and instead found that these claims were procedurally barred.

### 1. Garcia's remaining claims are not procedurally defaulted

"The procedural default doctrine . . . normally will preclude a federal court from reaching the merits of a habeas claim when . . . that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citations omitted). "An independent state ground will be found 'when the court actually relied on the procedural bar as an independent basis for its disposition of the case.'" *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012)). "A state law ground is adequate 'when it is a firmly established and regularly followed state practice at the time it is applied.'" *Id.* (quoting *Thompkins*, 698 F.3d at 986). When determining if a state ground is adequate, the court does not consider "whether the review by the state court was proper on the merits." *Id.* at 694. "If a claim was held to be defaulted by a state court on the basis of an adequate and independent procedural ground, federal habeas review is at an end unless a petitioner can show cause for the default and prejudice attributable thereto." *Johnson v. Thurmer*, 624 F.3d 786, 789 (7th Cir. 2010) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)).

In finding that Garcia's ineffective assistance of trial counsel claims were procedurally barred, the Wisconsin Court of Appeals relied on *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), and *State v. Romero-Georgana*, 2014 WI 83, 360 Wis. 2d 522, 849 N.W.2d 668. *Escalona-Naranjo* provides that, absent a "sufficient reason," a ground for relief raised for the first time in a Wis. Stat. § 974.06 motion may be summarily denied by the trial court in its discretion, without a decision on the merits of the claim, if the ground for relief could have and should have been raised on direct appeal or in a Wis. Stat. § 974.02 motion. 185 Wis. 2d at 181–84. Ineffective assistance of postconviction counsel can be "a sufficient reason" for a claim cognizable under Wis. Stat. § 974.06 that was not raised on appeal or an earlier motion for postconviction relief. *Rothering v. McCauthry*, 205 Wis. 2d 675, 682, 556 N.W.2d 136 (Ct. App. 1996). But in this case, the Court of Appeals did not address Garcia's claim of ineffective assistance of postconviction counsel and appears to have treated *Romero-Georgana* as an additional procedural limitation on § 974.06 motions for postconviction relief. The Court of Appeals' entire discussion of Garcia's unreviewed claims reads:

> Garcia next claims that trial counsel was deficient in asking Garcia prejudicial questions about his prior record and failing to object to portions of the State's cross-examination of him, which were not raised in Garcia's direct appeal. Garcia fails to demonstrate how and why these claims are "clearly stronger" than the issues postconviction counsel did present, *see State v. Romero-Georgana*, 2014 WI 83, ¶ 45, 360 Wis. 2d 522, 849 N.W.2d 668, and, as a result, these issues are procedurally barred by *Escalona-Naranjo*.

Dkt. No. 11-11 at 3.

Garcia does not dispute that *Escalona-Naranjo*'s procedural bar can be an adequate an independent state law ground of procedural default. *See Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002) (recognizing that the *Escalona-Naranjo* rule is an adequate state ground). Instead,

Garcia argues that the ineffective assistance of his postconviction counsel constitutes a sufficient reason for his failure to assert these claims earlier. Garcia further argues that the application of *Romero-Georgana* cannot be found to be an independent and adequate ground for denying relief because it is based on a federal law doctrine and was not firmly established and regularly applied at the time of his postconviction proceedings. I agree. In fact, it appears that *Romero-Georgana* is not even intended to be a procedural bar under Wisconsin law. Instead, it represents a refinement the Wisconsin Supreme Court added to the performance prong of *Strickland*'s test for ineffective assistance of postconviction counsel.

In *Romero-Georgana*, the Wisconsin Supreme Court held that the non-citizen defendant had procedurally defaulted the claim that his trial attorney had provided ineffective assistance of counsel by failing to move for withdrawal of his guilty plea to a charge of sexual assault of a child on the ground that the trial court had failed to advise him that his conviction could lead to his deportation or removal from the country. Although his initial postconviction counsel discussed with him the possibility of challenging the validity of his plea, his first motion did not seek relief on that basis. 360 Wis. 2d at 534. A second motion for postconviction relief filed by a different attorney likewise failed to challenge his guilty plea. *Id.* at 536. Finally, in a third motion that he filed *pro se*, the defendant claimed that postconviction counsel was ineffective in failing to raise the issue of the trial court's defective plea colloquy. *Id.* at 537.

In its decision affirming the denial of the third motion, the Wisconsin Supreme Court discussed both the substantive elements of a claim for ineffective assistance of counsel and the procedural requirements for asserting a claim in a § 974.06 motion. As to the procedural requirements for § 974.06, the court noted that the claim must not be one that could have been

13

asserted in direct appeal or in a previous motion for postconviction relief unless the movant has a "sufficient reason" for not asserting it earlier and that ineffective assistance of postconviction counsel can constitute a "sufficient reason." *Id.* at 541–42. In addition, the court noted that "to adequately raise a claim for relief, a defendant must allege 'sufficient material facts—e.g., who, what, where, when, why, and how—that, if true, would entitle [the defendant] to the relief he seeks.'" *Id.* at 543 (quoting *State v. Allen*, 2004 WI 106, ¶ 2, 274 Wis. 2d 568, 682 N.W.2d 433). As to the substantive elements of a claim of ineffective assistance of counsel, the court noted "the defendant must demonstrate: (1) that his counsel's performance was deficient; and (2) that the deficient performance was prejudicial." *Id.* (citing *Strickland*, 466 U.S. at 687). In elaborating on the first prong of the claim where ineffective assistance of appellate or postconviction counsel is alleged, the court held that to prevail the defendant must show that "a particular nonfrivolous issue was *clearly stronger* than issues counsel did present." *Id.* at 545 (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). The court then went on to hold after a lengthy analysis that, because Romero-Georgana did not allege sufficient facts in his motion to establish either a sufficient reason for failing to assert his claim earlier or that he was entitled to relief on the merits, the trial court's decision denying his motion without a hearing was properly affirmed. *Id.* at 558.

The state court decisions in this case reflect no such analysis. The trial court dismissed Garcia's additional claims of ineffective assistance of trial and postconviction counsel with the curt but false statement that "Mr. Garcia raises no issues not previously reviewed." Dkt. No. 1-1. And citing *Romero-Georgana*, the Wisconsin Court of Appeals simply stated "Garcia fails to demonstrate how and why these claims are 'clearly stronger' than the issues postconviction counsel

14

did present," and thus concluded they were procedurally barred by *Escalona-Naranjo*. Dkt. No. 11-11 at 3. This is not enough to bar federal review under § 2254.

Federal courts will not assume that a state court decision rests on adequate and independent state grounds when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman v. Thompson*, 501 U.S. 722, 734–35 (1991). "[I]n order for a procedural rule to be adequate to support a state court's judgment, that procedural rule must be applied in a 'consistent and principled way.'" *Page v. Frank*, 343 F.3d 901, 908–09 (7th Cir. 2003) (quoting *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000)). "State court decisions are not adequate to bar federal habeas review unless they rest upon firmly established and regularly followed state practice." *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999) (citing *James v. Kentucky*, 466 U.S. 341, 348–51 (1984)). "A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate, for the lack of notice and consistency may show that the state is discriminating against the federal rights asserted." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (citing *Johnson v. Mississippi*, 486 U.S. 578, 587–89 (1988)).

In deciding whether the state court's decision in this case rests on adequate and independent state grounds, it should first be noted that the "clearly stronger" standard adopted by the Wisconsin Supreme Court in *Romero-Georgana* for evaluating the performance of appellate or postconviction counsel in claims for ineffective assistance is not even a procedural rule, but rather a fact to be taken into consideration in assessing counsel's performance. In *Jones v. Barnes*, 463 U.S. 745 (1983), the Court held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of

15

success on appeal. Notwithstanding its holding in *Barnes*, the Court noted in *Smith v. Robbins* that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")). In other words, a defendant who claims his postconviction attorney who asserted ten claims on appeal was incompetent in electing to leave out an eleventh claim he deemed weaker than the rest will have an uphill battle in trying to demonstrate that his postconviction attorney's performance was deficient. But the Court's observation that such a defendant will have a heavy burden is not the same as saying his claim fails as a matter of law.

The procedural rule that the defendant in *Romero-Georgana* violated was the requirement that a § 974.06 motion allege sufficient facts that, if true, would entitled him to relief, as set forth in *State v. Allen*, 274 Wis. 2d at 441. The *Romero-Georgana* court concluded that the defendant's motion in that case failed to sufficiently allege facts showing a sufficient reason for failing to assert the claim earlier, as required by *Escalona-Naranjo*, or that the representation by his attorneys was constitutionally deficient within the meaning of *Strickland*. 360 Wis. 2d at 549–58. No such conclusion was reached here, and indeed, Garcia's 26-page motion with an additional 26 pages of exhibits addresses these precise questions and was anything but conclusory. Garcia's motion set out the specific factual allegations of deficient performance by trial and postconviction counsel that he claimed entitled him to relief. Dkt. No. 29-1 at 9–19. He also alleged that he had requested that postconviction counsel raise these additional issues in his motion for postconviction relief and on appeal, and attached the letters making such requests that he had sent to counsel. *Id.* at 20–21, Ex.

16

H and I. In light of this record, I am satisfied that Garcia did not procedurally default his additional claims. I therefore proceed to address them on the merits.

### 2. Garcia's remaining claims fail on the merits

Garcia first contends that his trial attorney provided ineffective assistance by inquiring into his prior arrest for carrying a concealed weapon in the course of her direct examination of him. He argues that evidence of his prior arrest was irrelevant and highly prejudicial, and notes that, in order for the prosecution to introduce such evidence, it would have had to first seek a ruling from the trial court allowing it to do so. That his own attorney elicited such evidence on direct examination in the absence of such a ruling, he contends, clearly demonstrates deficient performance. His trial attorney's error was compounded, Garcia contends, when she failed to object as the prosecutor questioned him about the details of his arrest on cross examination and thereby disclosed to the jury that five weeks before the shooting for which he was on trial, Garcia had been caught with a concealed and loaded handgun of the same caliber he was accused of shooting in this case. It was further revealed to the jury that Garcia was in a borrowed vehicle outside a woman's apartment with the seat fully reclined to avoid detection and in possession of a ski mask, rubber gloves, binoculars, and a two-way radio. The prosecutor then emphasized this evidence in his closing, suggesting that when they evaluate Garcia's testimony they begin with the circumstances surrounding his arrest the previous month and then recounting each detail once again. Garcia argues that his trial attorney was again ineffective in failing to object to this line of argument, as well as the prosecutor's improper vouching for witnesses and his suggestion to the jury that acquittal of the defendant necessarily implied that the police and prosecutor should go to jail. Postconviction counsel was ineffective,

Garcia contends, in failing to raise any of these claims in his initial motion for postconviction relief and on direct appeal.

Because there is no reasoned state court decision addressing these claims on the merits, "the federal court 'must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of [the Supreme] Court.'" *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (quoting *Harrington*, 562 U.S. at 102). "If such disagreement is possible, then the petitioner's claim must be denied." *Id.* Applying this "difficult to meet" standard here, I conclude that Garcia's claims fail.

Here, it is arguable that trial counsel's inquiry into Garcia's prior arrest was not deficient performance but instead a matter of trial strategy. As noted above, Garcia offered the evidence of his prior arrest in order to explain why he refused to come out of his house when police first arrived. The natural inference that the prosecution wanted the jury to draw from the fact that police had to enter the house and remove Garcia from his hiding place in the attic was that Garcia was attempting to avoid arrest for the shooting that had occurred only hours earlier. In other words, his hiding revealed consciousness of his guilt for the shooting. Garcia claimed instead that he was hiding because he did not want to be arrested on the warrant that had been issued when he failed to appear on the carrying a concealed weapon charge that arose out of his prior arrest. His attorney also argued in closing that, because he was honest about the facts surrounding the earlier arrest that put him in such a bad light, the jury should find credible his version of the events for which he was on trial. Dkt. No. 11-20 at 80:16–81:23.

18

It is likewise arguable that trial counsel did not err in failing to object to the prosecutor's argument that accepting the defense version of events required them to conclude that most of the police witnesses and the prosecutor himself belonged in jail was not deficient performance. Garcia's defense, after all, was that the state had manufactured evidence in order to frame him for a crime it knew he did not commit. Counsel characterized the State's case as a collection of "snarly manipulations and falsifications." *Id.* at 47:18. She claimed the State failed to provide her with the photographs its reconstruction expert testified substantiated his opinion of how the shooting likely occurred. *Id.* at 51:21–52:2. And she accused a detective of manufacturing evidence by manipulating Garcia's phone records. *Id.* at 64:16–66:8. "How the State has presented its entire case should concern you," Garcia's trial attorney argued in her closing, "and it should concern you very much." *Id.* at 80:6–8. In the face of these accusations from the defense, it is not clear that any objection to counsel's suggestion that believing the defense version required the jury to conclude that several of the State's witnesses, and the prosecutor as well, had themselves committed crimes. Fairminded jurists could disagree whether these instances of allegedly deficient performance by trial counsel meet the first prong of *Strickland*'s test for ineffective assistance of counsel.

The same is not true with respect to trial counsel's failure to object to the prosecutor's detailed inquiry into the details of the prior arrest and portrayal of Garcia as a predatory criminal stalking a woman and planning an unrelated crime. Dkt. No. 20-18 at 240:14–254:8. This evidence went far beyond the limited purpose for which counsel introduced evidence of Garcia's prior arrest, and it was highly prejudicial. The prejudice was compounded when the prosecutor suggested in his closing argument that the jury start its assessment of the credibility of Garcia as a witness with the circumstances surrounding his previous arrest. Dkt. No. 11-20 at 15:18–16:21. Counsel's failure

to object to the prosecutor's questions eliciting this evidence from her client and further reference to it during his closing argument would seem to constitute deficient performance within the meaning of *Strickland*'s two-prong test.

But that does not end the inquiry. In order to establish a constitutional violation, Garcia must show not only deficient performance but also prejudice or harm. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Harrington*, 562 U.S. at 111–12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . Instead, *Strickland* asks whether it is reasonably likely the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. . . . The likelihood of a different result must be substantial, not just conceivable." (internal quotations and citations omitted)).

Applying this standard here, it is clear that, or at the very least, fairminded jurists would disagree whether, counsel's failure to object to the prosecutor's questions about Garcia's previous arrest or his closing argument would have led to a different result. The plain fact is that the

evidence against Garcia was overwhelming. The evidence showed he had threatened to kill Hilda if she broke up with him and her new boyfriend. Two eyewitnesses identified him as the shooter, and the gun that fired the bullets recovered from Carlos' lung and the trunk of Luis' car was found under his back porch. Empty cartridges of rounds shot with the same gun were found in his basement. The data retrieved from the phone found in his car was consistent with Luis' claim that Garcia called him on his phone just before the shooting, and Garcia attempted to hide from the police when they arrived at his house within hours after the shooting occurred. Garcia was unable to corroborate any alibi, and his own mother recounted his acknowledgement that he had done "something bad" when he arrived home. In the face of this evidence, the story Garcia concocted made no sense, and his attorney's failure to object to the prejudicial evidence improperly admitted would not have changed the result. Postconviction counsel's failure to assert the same claims on appeal likewise had no impact on the result.

## CONCLUSION

For the reasons given above, Garcia is not entitled to federal habeas relief on any of his claims. His petition for a writ of habeas corpus is therefore **DENIED** and his motion for reconsideration (Dkt. No. 17) is **DENIED**. The clerk is directed to enter judgment dismissing the case. A certificate of appealability will be **DENIED**. I do not believe that reasonable jurists would believe that Garcia has made a substantial showing of the denial of a constitutional right in light of the overwhelming evidence against him.

Garcia is advised that the judgment entered by the clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event

Garcia decides to appeal, he should also request that the court of appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

**SO ORDERED** this   19th   day of August, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court